IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Fredericka Wagner, et al.,

    Plaintiffs,

    v.                                Case No. 2:08-cv-431

Circle W Mastiffs, et al.,        JUDGE SMITH
                                          Magistrate Judge Kemp

    Defendants.

Craig W. Williamson,

    Plaintiff,

    v.                                Case No. 2:09-cv-0172

American Mastiff Breeders         JUDGE SMITH
Council, et al.,                        Magistrate Judge Kemp

    Defendants.

<u>ORDER</u>

    These cases are before the Court for a ruling on the Williamsons' motion to compel discovery (#139).  The four issues raised in the motion are disposed of as follows.

**I.  CKCB Breeder Reports**

    Although there has been a good bit of back and forth about these particular documents, the bottom line appears to be that the plaintiffs have produced all such documents in their possession.  Declarations to that effect are attached to the memorandum in opposition.  The Williamsons complain in their reply memorandum that the plaintiffs' failure to make this known prior to the filing of the motion to compel caused the Williamsons to waste their time addressing the issue in their motion, and there is some merit to that complaint.  However, they ask the Court to rule that these documents are relevant and not

confidential, so that they can subpoena them from the Continental Kennel Club through "an unencumbered supoena."

The Court cannot make such a ruling on this record. If and when a subpoena issues, and if either the CKC or the plaintiffs object to any portion of it, the issues of relevance and confidentiality of the precise records requested in the subpoena can be briefed and decided. The Court cannot anticipate such proceedings, however, or render an advisory opinion about the CKC's obligation to produce records which have not been subpoenaed. Further, depending upon the location of the records or the offices of the CKC, this Court may not be the Court from which the subpoena would issue, and jurisdiction over the issue may lie in some other District Court unless the plaintiffs would choose to move for a protective order here. For all of these reasons, the Court simply cannot give the Williamsons the order they ask for, although it is hoped that the discussion which follows in Section IV of this order might have some impact on the way in which any subpoena-related matters proceed.

## II. Individual Interrogatory Responses

This issue began several years ago when plaintiffs in the first-filed case responded jointly to interrogatories directed to each of them. Counsel and the Court engaged in a discussion of the issue, and the Court ruled that separate answers were necessary only to the extent that the joint answers did not actually reflect the answers of each individual plaintiff due to differences in the responses they were required to make. According to multiple representations made by plaintiffs' counsel, counsel subsequently prepared and served on the Williamsons' attorney separate sets of answers.

A fair number of those separate set of answers never made it from the Williamsons' attorney to the Williamsons. At the urging of the Court, the plaintiffs' attorney, Mr. Rubin, agreed to

-2-

search for those answers among his files so long as his clients were reasonably reimbursed for the cost of this duplicative work. The Williamsons have been told that some of these separate answers, but not all, have been located, and that the cost of finding them was just over $100.00.  They are dissatisfied with this response because, apparently based on discussions with their former counsel's office, they do not believe that separate answers were ever prepared by some of the plaintiffs, and that this failure is the explanation for why Mr. Rubin's office cannot produce them.

The Court is unaccustomed to a situation where neither the producing nor the receiving attorney seems to be able to locate copies of documents served during discovery.  Keeping track of such matters - especially interrogatory answers - seems fairly basic.  On the other hand, the Court is convinced that, as a factual matter, Mr. Rubin did prepare and transmit the answers as he has told the Court he did.  His clients should not have to bear the expense of doing so twice.  The Court will not issue any further orders on this issue, but the Williamsons may, of course, ask similar questions at the upcoming depositions should they so desire.

### III.  Fredericka Wagner "Mother Files"

As originally presented, this issue related to certain files about which Ms. Wagner testified in her deposition.  She identified these files but never produced them.  She has since taken the position that the files no longer exist.  She was directed to provide, and now has provided, a declaration explaining what happened to them.  The Williamsons contend that they are entitled to some type of relief based on how long it took for this declaration to be provided, and they also question its accuracy. Further, they argue that she also kept records relating to the death of her breeding stock and the number of

puppies and litters produced, and that her declaration does not directly address these documents, stating neither that these documents were destroyed nor that she had already produced all such records in her possession.

There has already been much discussion about and time devoted to this issue, but the Williamsons have raised a valid point about the other documents.  Within fourteen days, Ms. Wagner shall file a supplemental declaration which addresses this issue.  That filing should put to rest any lingering concerns about the production of these documents.

### IV.  Sale Information on 21 Specific Dogs

This last issue is perhaps the most contentious.  The Williamsons have long sought information about dogs which were bred and sold by the various plaintiffs.  Plaintiffs have continually (and despite suggestions by the Court to the contrary) refused to produce any such records, claiming that they are both proprietary and confidential and that they are irrelevant.  In particular, in their briefing on the motion, they argue that the only possible relevance such records might have would be to support a "clean hands" defense to the Lanham Act claims, and that no such defense can be found in the Williamsons' pleadings.

Turning to the relevance issue first, the Williamsons make several arguments why such information is relevant.  First, they assert that they raised this issue in a reply memorandum filed on August 15, 2008.  It is true that they did so, but it is not clear what that argument related to apart from disputing the truth of a representation which plaintiffs make in their complaint that they all abide by the "breed standard for the American Mastiff set by the AMBC and recognized by the Continental Kennel Club."  Although the reply brief questioned how plaintiffs, or "anyone" could "bring a suit such as this"

-4-

given the fact that plaintiffs have also bred and sold mastiffs that purportedly do not meet the "Muzzle Standard" (i.e. a "mask" around the eyes of the dog), see Doc. 11, at 9-10, it is not at all clear that the argument pertained to either a clean hands defense or any other particular reason being advanced for dismissal of the complaint.  The Court is not persuaded that this reply memorandum provided sufficient notice to plaintiffs that a clean hands defense would be raised, and the Williamsons do not argue that they have mentioned this defense in any pleading.

On the other hand, it is true that plaintiffs have affirmatively alleged, as part of the factual allegations supporting their Lanham Act claim, that they "all" abide by the breed standard at issue here.  Complaint, Doc. 1, ¶13.  They then allege, in their Lanham Act count, that the Williamsons' selling of such dogs is likely to cause confusion or mistake and have "diluted the value of the American Mastiff breed and brand."  Id. at ¶s 35-36.  It is somewhat interesting that plaintiffs now claim that, having pleaded this fact, they have no obligation to produce documents which may shed light on whether the "fact" they have pleaded is a fact at all.  Apparently, their position is that they have pleaded a fact which might be relevant to a defense which the Williamsons could have, but did not, raise, but which is irrelevant to the claim in support of which this particular fact has been pleaded.  The Court cannot accept that argument.

Likelihood of confusion is an element of a dilution claim. See, e.g., Homeowners Group, Inc. v. Home Marketing Specialists, 931 F.2d 1100 (6th Cir. 1991).  The strength of the mark is one factor to consider in determining likelihood of confusion. Frisch's Restaurant, Inc. v. Shoney's Inc., 759 F.2d 1261, 1264 (6th Cir. 1985).  Plaintiffs have properly pleaded, in support of their claim that their mark is being diluted by the sale of

maskless Mastiffs, that they do not market such dogs as American Mastiffs, which would demonstrate that their mark is strong - i.e. that they themselves do not dilute it through such sales. Conversely, if they do sell such dogs in derogation of their own mark, that tells the Court something about the strength of that mark, and it might also relate to how similar their actual mark is to the Williamsons' - another element of the plaintiffs' Lanham Act claim. For these reasons, the Court concludes that the information the Williamsons are seeking is relevant not just to a potential clean hands defense, but to affirmative elements of the plaintiff's case - elements which they have pleaded specifically. Thus, the question about whether the information is discoverable turns not on relevancy but on the issue of confidentiality.

All of the declarations attached to the plaintiffs' memorandum state that the plaintiffs consider customer information to be "competitively sensitive" and that if they were to reveal contact information for their customers, that would be a "breach of [their] business relationship" with the customer and would harm their reputation as a breeder. They also insist that providing such information would be a breach of the customers' privacy interests. Finally, they express concern that the Williamsons might put such information on "social media outlets" which would, again, harm both the breeders and their customers.

First, the Court is not persuaded that giving the Williamsons customer information would cause any harm to the customers themselves. Plaintiffs have not explained how a person who buys a particular breed of dog has a privacy interest in keeping such information confidential. Presumably, owning a mastiff is not the type of information which, if disclosed, would hold a person up to public disgrace or ridicule, and it is not the type of activity which people ordinarily conduct only in

private.  The Court assumes that these customers do not have any hesitation in walking their dogs in public, telling their friends and neighbors that they own a mastiff, or even taking them to shows.  It is simply not clear how revealing this information, especially under the restrictions in a protective order, will embarrass or humiliate the customers themselves.  Cf. Bullion v. Gadaleto, 872 F.Supp. 303, 307 (W.D. Va. 1995)(the key to assessing privacy interests turns on the potential for embarrassment and emotional distress from the disclosure of information).

Nor is it clear that the plaintiffs' customer relations will be damaged if they are required to reveal customer information.  They have not produced any evidence that they have a contractual obligation to keep this information private.  Further, any disclosure in this case would occur pursuant to a Court order, so customers could not accuse the plaintiffs of supplying this information to the Williamsons voluntarily.  Whether someone would be less likely to buy a dog in the future from a breeder who turned over that customer's contact information to someone else only when ordered to do so by a Court is a question of fact, and one on which plaintiffs have produced no evidence.  The Court cannot assume, without proof, that this would be a factor in future dealings with these or other customers.

That leaves only the plaintiffs' concern that this is competitively sensitive information which the Williamsons will somehow use to the plaintiffs' disadvantage.  The protective order, of course, will restrict the use of such information solely for purposes of this litigation (which should also address the concern that such information will be posted on social media sites).  Further, the Court is not persuaded that this information is, in fact, highly competitively sensitive.  The Williamsons point out that Ms. Wagner previously produced

customer information without redactions and without a protective order and that such information is also routinely disclosed to the CKC.  The plaintiffs have made no factual showing that their ability to sell American Mastiffs in the future, either to these or other customers, will be undercut by any competing sales efforts by the Williamsons – and, again, the Williamsons will not be permitted to use this information for their own business purposes, if, in fact, they are serious competitors of the plaintiffs.  For all these reasons, the Court concludes that any lingering concerns about production of customer information on grounds that it is proprietary, confidential, or competitively sensitive are adequately addressed by typical restrictions on the use of such information, and that the Williamsons' need for this information outweighs any residual privacy interests involved.  That being so, they are entitled to the specific information they have requested concerning the 21 dogs in question.

## V.  Order

For the reasons set forth above, the Williamsons' motion to compel discovery (#139) is granted in part and denied in part.  Plantiffs shall provide the additional discovery required by this order within fourteen days.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge