```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Fredericka Wagner, et al.,

    Plaintiffs,

  v.                                        Case No. 2:08-cv-431

Circle W Mastiffs, et al.,                JUDGE SMITH
                                                Magistrate Judge Kemp

    Defendants.


Craig W. Williamson,

    Plaintiff,

  v.                                        Case No. 2:09-cv-0172

American Mastiff Breeders                 JUDGE SMITH
Council, et al.,                          Magistrate Judge Kemp

    Defendants.

<u>ORDER</u>

    This matter is before the Court on a motion to compel filed by Diane St. Martin, Cameran Pridmore, and Sandy Taylor.  The motion seeks an order compelling Craig and Jennifer Williamson and Circle W Mastiffs (the Williamsons) and Fredericka Wagner and Flying W Farms, Inc. (Ms. Wagner) to produce the settlement agreement they entered into  resolving their claims in this case.  Only Ms. Wagner and Flying W Farms have filed a response opposing this motion and the motion now has been fully briefed.  For the following reasons, the motion to compel (#174) will be denied.

                                                              I.

    This consolidated action has been pending in this Court for five years.  Throughout that time, the factual and procedural history has been set forth many times in various orders and will not be repeated here.  For purposes of the current motion,

however, the following background is relevant.

These cases involve the sale of American Mastiff puppies. Case No. 2:08-cv-431 was filed by Fredericka Wagner, Flying W Farms, the American Mastiff Breeders' Council and others on May 6, 2008, against Circle W Mastiffs and Nevada residents Jennifer and Craig Williamson.  According to the factual allegations of the complaint, Ms. Wagner and Flying W Farms created the American Mastiff dog breed.  The complaint asserts claims under the Lanham Act, 15 U.S.C. §§1117-25, for various alleged actions by the Williamsons which diluted the value of the American Mastiff breed and brand.  The Williamsons and Circle W filed a counterclaim against only Ms. Wagner and Flying W for breach of contract, breach of the duty of good faith and fair dealing, fraudulent and negligent misrepresentation, implied and equitable indemnity, and contribution.  By order dated March 12, 2010, the Court dismissed all counterclaims against Ms. Wagner and Flying W except those for fraud/fraudulent inducement and negligent misrepresentation.

In addition to filing a counterclaim in Case No. 2:08-cv-431, Mr. Williamson also originally filed Case No. 2:09-cv-172 in the United States District for the District of Nevada naming the plaintiffs in Case No. 2:08-cv-431 as defendants.  By order dated March 9, 2009, the case was transferred to this District and was consolidated with Case No. 2:08-cv-431 by order dated March 26, 2009.  Following an amendment to his complaint, Mr. Williamson asserted claims for violations of the Sherman Act, defamation and libel/slander per se, fraud, intentional interference with a business relationship, and conspiracy.  By order dated August 10, 2010, the Court dismissed all of Mr. Williamson's claims except the defamation and libel/slander per se claims and the intentional interference with a business relationship claim.

On February 21, 2013, a "Stipulation of dismissal of all claims between Fredericka Wagner and Flying W Farms, Inc. and

Craig Williamson, Jennifer Williamson and Circle W Mastiffs only - all other claims remain pending" was filed by Ms. Wagner on behalf of herself personally and as president of Flying Farms and the Williamsons, with Mr. Williamson signing as Circle W's authorized representative. In other words, following the settlement agreement, Mr. Williamsons' claims for defamation, libel/slander per se, and intentional interference with a business relationship claim remain pending against the remaining defendants in Case No. 2:09-cv-172. Further, the Lanham Act claim remains pending on behalf of the remaining plaintiffs in Case No. 2:08-cv-431. On that same date the stipulation was filed, Diane St. Martin, Cameran Pridmore, and Sandy Taylor - who remain as plaintiffs in Case No. 08-431 and defendants in Case No. 09-172 - filed the motion to compel currently before the Court.

## II.

In the motion to compel, the moving parties, without any discussion of Fed.R.Civ.P. 26, contend that the settlement agreement is discoverable despite any claim of confidentiality. They assert that the settlement agreement is relevant for several reasons. First, they argue that they need to know how their potential liability may be limited by the settlement. As they explain it, there is a complete overlap of claims between the Williamsons' recovery from Wagner and the Williamsons' remaining claims against them. The moving parties argue that they do not want to be a source of double recovery for the Williamsons if the settlement with Ms. Wagner has made them whole with respect to some or all of their claims. Further, they maintain that allowing them access to the settlement agreement may promote the resolution of this matter. That is, they argue that knowing the terms of the settlement agreement will allow them to estimate more accurately the amount of the Williamsons' alleged damages.

Finally, they argue that knowledge of the terms of the settlement agreement may help them evaluate Ms. Wagner's potential bias, interest and credibility. As they see it, because she is the lead plaintiff, the head of the AMBC, and the "main target" of the Williamsons' claims, Ms. Wagner "is the key witness in this case." They suggest that they are entitled to discovery of the settlement agreement to the extent that it might provide evidence of something in the nature of a quid pro quo between Ms. Wagner and the Williamsons.

In response, Ms. Wagner explains that she has suffered a debilitating stroke which prevents her further participation in this matter and necessitated her entering into a settlement agreement with the Williamsons. She perceives that the moving parties are upset by her agreement to settle with the Williamsons, leaving them essentially to fend for themselves. She believes that their desire to gain access to the settlement agreement is intended as a punitive measure, especially since, from her perspective, none of the few remaining claims in this action involve her. This state of affairs, she argues, does not provide support for compelling disclosure of the settlement agreement.

On a more substantive level, Ms. Wagner contends that the motion to compel should be denied for various reasons. First, she asserts that because she is no longer a party to this action, she cannot be compelled to provide a copy of the settlement agreement, let alone such an agreement designated by the settling parties as confidential. Further, she argues that the agreement is not admissible under Fed.R.Evid. 408 and not discoverable under Fed.R.Civ.P. 26.

Acknowledging, however, that courts have found settlement agreements subject to discovery upon a demonstration of relevance, Ms. Wagner asserts that the agreement here is not

-4-

relevant for purposes of impeachment or determining liability. With respect to the issue of impeachment, Ms. Wagner argues that she will be unable to testify at trial and the settlement agreement cannot be used to impeach her deposition testimony offered prior to the settlement agreement so this issue provides no basis for a finding of relevance.  Ms. Wagner recognizes the potential for bias or collusion raised by certain agreements, frequently termed as "Mary Carter" agreements, but merely states, without any elaboration, that "[n]o such agreements exist in this consolidated case."  See Response, p.5.

On the issue of liability, Ms. Wagner contends that the settlement agreement has no bearing on the issue and the moving parties, who bear the burden on this issue, have not demonstrated otherwise.  As Ms. Wagner explains, to the extent that the moving parties seek access to the settlement agreement to assess the extent of their own liability and damages, such an assessment is not impacted by the terms of her settlement with the Williamsons. She asserts that this is not a personal injury case involving joint and several or contribution liability so double recovery simply is not possible here.  Rather, she continues, the Williamsons' remaining claims in Case No. 09-172 against the moving parties are based only on Cameran Pridmore's allegedly tortious actions.  In light of this, she argues, there is no overlap of claims because the settlement agreement addresses only the direct transactions between herself and the Williamsons.  She has submitted the settlement agreement for the Court's in camera review, at the same time acknowledging, to some extent, that the document is not privileged.

In reply, the moving parties contend that Ms. Wagner remains a party to this case because the stipulation of dismissal was filed without the consent of the required parties and they do not consent to it.  Additionally, they argue that Ms. Wagner remains

-5-

an active party in this case as the president and statutory agent, or controlling member, of AMBC.

In addressing Ms. Wagner's more substantive arguments, the moving parties contend that the settlement agreement is discoverable under the liberal standards of Rule 26.  They note that courts in both this District and the Northern District have found settlement agreements relevant to the issue of damages.  To the extent that Ms. Wagner argues that there is no issue of set-off here because this is not a set-off action, they assert that Ohio law holds otherwise.  In support of this position, they cite to Ohio Revised Code §2307.28, and <u>Celmer v. Rodgers, D.O.</u>, 2005 WL 3610478 (Trumbull Co. App. Dec. 29, 2005), in which the court held that "[s]etoff of settlement funds has been recognized as a means to protect against the danger of a double recovery in cases where settlement agreements have been entered into between co-defendants."  On this point, they contend that, contrary to Ms. Wagner's position, the Williamsons' remaining claims are directed at all defendants in Case No. 2:09-cv-172, even to the extent that they address the conduct of Cameran Pridmore.  They also note that the Lanham Act claim remains pending in Case No. 2:08-cv-431 and that the Williamsons have indicated their intention to seek attorneys' fees against all parties.  As a result, they maintain, the claims against Ms. Wagner cannot be separated from the claims against them, thereby providing the potential for double recovery.

With respect to the issues of collusion or bias, the moving parties argue that they have no way of confirming the state of Ms. Wagner's health and that no evidentiary support has been provided to demonstrate that Ms. Wagner cannot appear for trial. Further, they dismiss her bare statement that no "Mary Carter" agreement exists here as insufficient to demonstrate lack of relevance.  They again rely on cases where courts have found a

-6-

settlement agreement relevant in circumstances similar to those here.

Finally, the moving parties contend that the settlement privilege is not applicable to a finalized settlement agreement. As a result, they argue that the Court should decline Ms. Wagner's invitation to conduct an in camera review.

III.

Briefly, at the outset, the Court notes that Ms. Wagner has raised the issue of Fed.R.Evid. 408 in challenging the motion to compel. That rule, however, "governs admissibility rather than discoverability" and cannot be relied upon to prevent the production of the settlement agreement at the discovery stage. Tanner v. Johnston, 2013 WL 121158, *2 (D. Utah January 8, 2013). Ms. Wagner appears to recognize as much in her response. Consequently, as evidenced below, the Court will not be analyzing the issues presented by the current motion to compel in terms of admissibility under Fed.R.Evid. 408.

In Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 981 (6th Cir. 2003), the Sixth Circuit Court of Appeals recognized a "settlement privilege" which protects settlement negotiations from discovery but does not extend to the terms of the final agreement. In line with this decision, courts within this Circuit have compelled the disclosure of settlement agreements, including a breakdown of the claims actually settled and the settlement amounts. See, e.g., Scheurer Hospital v. Lancaster Pollard & Co., 2012 WL 5471135 (E.D. Mich. November 9, 2012); Gardiner v. Kelowna Flightcraft, Ltd., 2011 WL 1990564 (S.D. Ohio May 23, 2011); Oberthaler v. Ameristep Corporation, 2010 WL 1506908 (N.D. Ohio April 13, 2010); Thomas & Marker Const. Co. v. Wal-Mart Stores, Inc., 2008 WL 3200642 (S.D. Ohio August 6, 2008).

In doing so, courts have not been persuaded by any claim of

confidentiality as grounds for precluding the disclosure of a settlement agreement. As explained by the court in Oberthaler:

> [A]greements are not protected from discovery simply because they have been denominated "confidential" by the parties. "[A] general concern for protecting confidential information does not equate to privilege [ ... ].[I]n the context of settlement agreements the mere fact that settling parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery. Simply put, litigants may not shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality."

Id. at *1; see also American Guar. and Liab. Ins. Co. v. CTA Acoustics, Inc., No. 05-80-KKC, 2007 WL 1099620, at *4 (E.D. Ky. April 10, 2007) ("the confidential settlement agreement is not privileged ... [and] is not protected from discovery simply because it has been denominated 'confidential' by the parties"). Rather, the analysis regarding discovery of a settlement agreement, like the one involved here, has focused on the issue of relevance under Fed.R.Civ.P. 26.

In light of the above, the only issue before the Court is that of relevance under Fed.R.Civ.P. 26. Because there is no issue of privilege here, the Court will not conduct the in camera review Ms. Wagner suggests. See Gardiner, supra; Thomas & Marker, supra.

Turning to Rule 26, the general principles involving the proper scope of discovery are well known. The Federal Rules of Civil Procedure authorize extremely broad discovery. United States v. Leggett & Platt, Inc., 542 F.2d 655 (6th Cir. 1976), cert. denied 430 U.S. 945 (1977). Therefore, Fed.R.Civ.P. 26 is to be liberally construed in favor of allowing discovery. Dunn v. Midwestern Indemnity, 88 F.R.D. 191 (S.D. Ohio 1980). Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not

privileged, can be discovered. The concept of relevance during discovery is necessarily broader than at trial, <u>Mellon v. Cooper-Jarrett, Inc.</u>, 424 F.2d 499 (6th Cir. 1970), and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best." <u>Coleman v. American Red Cross</u>, 23 F.3d 1091, 1097 (6th Cir. 1994).

    Information subject to disclosure during discovery need not relate directly to the merits of the claims or defenses of the parties. Rather, it may also relate to any of the myriad of fact-oriented issues that arise in connection with the litigation. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340 (1978). On the other hand, the Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request. <u>See Herbert v. Lando</u>, 441 U.S. 153 (1979). Additionally, the Court has discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources. <u>See</u> Fed.R.Civ.P. 26(b)(2). Finally, the Court notes that the scope of permissible discovery which can be conducted without leave of court has been narrowed somewhat by the December 1, 2000 amendments to the Federal Rules. Rule 26(b) now permits discovery to be had without leave of court if that discovery "is relevant to the claim or defense of any party ...." Upon a

showing of good cause, however, the Court may permit broader discovery of matters "relevant to the subject matter involved in the action." Id.

There is no question that "'[t]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.'" Guinn v. Mount Carmel Health Systems, 2010 WL 2927254, *5 (S.D. Ohio July 23, 2010) quoting Clumm v. Manes, Case No. 2:08-cv-567 (S.D.Ohio May 27, 2010) (King, J.); see also Berryman v. Supervalu Holdings, Inc., 2008 WL 4934007 (S.D. Ohio Nov.18, 2008) ("At least when the relevance of a discovery request has been challenged the burden is on the requester to show the relevance of the requested information.") (internal citation omitted). When the information sought appears to be relevant, the party resisting production has the burden of establishing that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm. See Vickers v. General Motors Corp., 2008 WL 4600997, *2 (W.D. Tenn. September 29, 2008).

With respect to confidential settlement agreements specifically, the Court notes that there is some authority for application of a heightened relevancy standard for discovery. See, e.g., Bottaro v. Hatton Assocs., 96 F.R.D. 158 (D.C.N.Y. 1982); In re Flat Glass Antitrust Litigation, 2013 WL 1703864 (W.D. Pa. April 19, 2013). For example, some courts have required the party seeking discovery "'to make a particularized showing that the documents relating to settlement agreements are relevant and likely to lead to the discovery of admissible evidence.'" Flat Glass Antitrust Litigation, at *1 (citation omitted). Other courts, however, have declined to apply such a heightened standard. See, e.g., Tanner, 2013 WL 121158 at *3; ABF Capital Management v. Askin Capital, 2000 WL 191698 (S.D.N.Y.

-10-

Feb. 10, 2000). Ms. Wagner has not argued for the Court's application of a heightened relevancy standard here and has not cited to any controlling cases from this Circuit supporting the application of such a standard.

Turning to the moving parties' arguments regarding the settlement agreement, they contend that it is relevant to the issues of Ms. Wagner's bias and credibility as a witness and to the issue of damages. They also argue, to some degree, that its relevance arises from the potential that their knowledge of its contents will promote their own settlement in this matter.

### A. Relevance as to Bias and Credibility

With respect to the issue of Ms. Wagner's bias and credibility, the Court notes that settlement agreements frequently are found to be discoverable in order to allow the requesting party to explore these issues with respect to witnesses. See, e.g., Cadlerock Joint Venture, L.P. v. Royal Indemnity Company, 2012 WL 443316 (N.D. Ohio Feb. 10, 2012) (settlement agreement relevant to testifying witnesses' credibility and bias); Goodyear Tire and Rubber Co. v. Dow Deutschland GMBJ & Co. OHG, 2009 WL 3614959 (N.D. Ohio Oct. 28, 2009); Tanner v. Johnston, 2013 WL 121158, at *5-6; Transportation Alliance Bank, Inc. v. Arrow Trucking Co., 2011 WL 4964034, *2 (N.D. Okla. October 19, 2011)(settlement agreement relevant for purposes of exploring bias and credibility of important fact witness); see also Thomas & Marker, 2008 WL 3200642, at *2 (requesting party insisted employees of settling party would be called to testify at trial and settle agreement found relevant on issue of their credibility). Settlement agreements also have been found subject to discovery when there is the potential for a witness to testify in person at trial. See, e.g., Meharg v. I-Flow Corporation, 2009 WL 3032327, *6 (S.D. Ind. Sept. 18, 2009). On the other hand, courts have found

a confidential settlement agreement not to be relevant to the issue of bias or credibility where there is a stated intention not to call particular witnesses at trial or no indication that particular witnesses will testify.  See, e.g., In re Flat Glass, 2013 WL 1703864, at *1; Pamlab, L.L.C. v. Rite Aid Corporation, 2006 WL 186199 (E.D. La. Feb. 7, 2006).

    Here, Ms. Wagner was deposed prior to entering into the settlement agreement with the Williamsons.  As a result, disclosure of the agreement to assist the moving parties with preparation for her deposition clearly is not necessary and the moving parties do not suggest otherwise.  Rather, the focus of their argument as to credibility and bias is directed to Ms. Wagner's trial testimony.  Ms. Wagner has represented to the Court, however, that she is in poor health and will not be able to participate in any trial of this matter.  The moving parties take issue with this representation and note that no evidence has been presented in support.  At the same time, however, the moving parties do not provide any evidence refuting this representation.  Accordingly, the Court, at this point, presumes the truthfulness of Ms. Wagner's representations regarding her health.  In light of this, as it stands now, this case does not present a situation where the potential bias or credibility of a trial witness is at issue.  This fact easily distinguishes it from the circumstances of the numerous cases where courts somewhat routinely have ordered the disclosure of a settlement agreement.  For this reason, the Court is not persuaded that, at this time, the settlement agreement is relevant to the issues of Ms. Wagner's credibility or bias.  Consequently, the motion to compel will not be granted on this ground.

    The Court notes that, as an aside, the moving parties mention that the settlement agreement also is relevant to the bias and credibility of the Williamsons.  The Court does not find

this suggestion persuasive given the Williamsons' posture in this consolidated action relative to the moving parties.

In reaching the above conclusion, the Court is aware of the significance of Ms. Wagner's role in these consolidated actions. Consequently, the moving parties are free to renew their motion to compel regarding the settlement agreement should circumstances change and should it become apparent that Ms. Wagner will provide live testimony at some future date.

### B.  Relevance as to Damages

The moving parties also argue that the settlement agreement is relevant to the issue of damages or, more specifically, a set-off analysis.  Although they briefly reference the pending Lanham Act claim and Mr. Williamson's alleged intention to seek attorneys' fees relating to that claim, they argue the issue of set-off in terms of Ohio law only.  In light of this, the Court understands their argument on the issue of set-off as directed specifically to the Williamsons' state law claims.  In making their argument, they rely, without much elaboration, on O.R.C. §2307.28.  That statute sets forth the effect of a release or a covenant not to sue or not to enforce judgment and provides that the claim against other tortfeasors is reduced by the amount of the consideration paid in exchange for the release.  Eysoldt v. Proscan Imaging, 2011 WL 6885346 (Hamilton Co. Dec. 28, 2011); Spalla v. Fransen, 188 Ohio App.3d 666 (Geauga Co. 2010).

According to the moving parties, there is a complete overlap of claims and potential for double recovery by the Williamsons that entitled them to learn the terms of the settlement agreement for purposes of set-off.  To the contrary, Ms. Wagner argues that no potential for double recovery exists in this case because there is no overlap of claims.  As Ms. Wagner sees it, the remaining claims relate most directly to the actions

-13-

of Cameran Pridmore.

The Williamsons' three remaining claims are for defamation (Counts VI and VII) and intentional interference with a business relationship (Count IX).  The moving parties argue that because these claims are directed against all defendants, including Ms. Wagner, there is a complete overlap of claims which cannot be separated.  It may well be that the settlement agreement is relevant to the issue of set-off in this case.  Further, the Court is aware that other courts in this District have found the potential for set-off sufficient to satisfy the relevance standard of Rule 26 and have compelled the disclosure of settlement agreements in similar circumstances.  See Gardiner, supra; Thomas & Marker, supra.  Here, however, the moving parties have not addressed the issue with enough specificity in their current briefing to allow the Court to make a decision on this issue.  That is, the moving parties, who, as discussed above, bear the burden on this issue, simply have not met that burden here.  They have not, for example, set forth facts about the potentially overlapping claims that would show, or even make likely, that conduct engaged in by Ms. Wagner could form the basis for any claim against them, or that Ms. Wagner's and their actions necessarily combined to produce a single injury.  Any conclusions on issues like these would, on the current record, be nothing more than speculation.  Consequently, the motion to compel will not be granted on this ground at this time.  However, the moving parties are free to renew their motion to compel if they are able to address this issue more specifically.

    C.   Relevance as to Potential Dispute Resolution

The moving parties' final argument is that the settlement agreement is relevant to the issue of dispute resolution because

-14-

it will allow them to assess more accurately the Williamsons' current alleged damages.  In making this argument in their motion, they rely on White v. Kenneth Warren & Son, Ltd., 203 F.R.D. 364 (N.D. Ill. 2001) where the court compelled disclosure of a settlement for, among other reasons, its belief that such disclosure would promote further settlement as well as judicial economy.  Ms. Wagner does not specifically address this issue in her response and the moving parties have not raised it again in their reply so there is minimal briefing on this issue.  To the extent that the moving parties may continue to rely on such an argument, however, it is easily addressed.

Other courts addressing this issue have concluded that, simply because access to a settlement agreement may promote settlement or judicial economy, this potential does not make the agreement relevant.  Rather, these courts have concluded that these arguments address the policy reasons in favor of disclosure of settlement agreements, rather than the issue of relevance. See, e.g., Tanner, 2013 WL 121158, at *6; ABF Capital Management, 2000 WL 191698, at *2; Centillion Data Systems, Inc. v. Ameritech Corp., 193 F.R.D. 550 (S.D. Ind. 1999).  The Court agrees that access to a settlement agreement for purposes of evaluation of settlement or negotiation strategy is not an issue directed to relevance.  Consequently, the motion to compel will not be granted on this ground.

IV.

For the foregoing reasons, the motion to compel (#174) is denied.

V.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A),

Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

    This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

                                              /s/ Terence P. Kemp
                                              United States Magistrate Judge